IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

LARRY WAYNE CANTRELL,

        Plaintiff,

v.                                       Civil Action No. 3:21-CV-15
                                       (GROH)

SHAWN STRONG,
REGGIE SELLERS,
KAREN PSZCZOLKOWSKI,
RICHARD MCKEEN,
CHAD RICHMOND,
JUSTIN WADE,
DRAKE WILLIAMS,
JEREMY KILLGORE,
RUSSELL COOK,
SPENCER PATTERSON, and
TONY STOCKLASP,

        Defendants.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On January 28, 2021, the *pro se* Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1.[1] Following issuance of a notice of deficient pleading, Plaintiff refiled his complaint on the Court-approved form on February 23, 2021. ECF No. 9. Plaintiff is currently an inmate at the Mount Olive Correctional Complex in Mount Olive, West Virginia. https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Search.

---

[1] All ECF number cited herein are in 3:21-CV-15, unless otherwise noted.

Previously, Plaintiff was an inmate at Northern Correctional Facility in Moundsville, West Virginia, where he contends his civil rights were violated.  ECF No. 9 at 4.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review.  For the reasons set forth below, this Court recommends that Plaintiff's complaint be dismissed with prejudice for failure to state a claim.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiff's Complaint

Plaintiff's complaint alleges four[2] grounds for relief against the Defendants: (1) that Defendants  Strong, Pszczolkowski, Stocklasp, and Sellers failed to train, instruct, or supervised subordinates in the proper use of restraints and chemical agents, and that such failure led to violations of Plaintiff's civil rights [ECF No. 9 at 7, 14]; (2) that Defendants McKeen, Richmond, Wade, Williams, Killgore, Cook and Patterson exposed Plaintiff to chemical agents and placed him in rear restraints for approximately one hour and 50 minutes even though Plaintiff was compliant during that period [Id. at 8, 13 – 14]; (3) that Defendants McKeen, Richmond, Wade, Williams, Killgore, Cook and Patterson delayed Plaintiff's access to medical care for the purpose of causing Plaintiff pain [Id. at 8, 14]; and (4) that Defendants refused to decontaminate Plaintiff or release his hand or foot restraints [Id.].

Plaintiff asserts that on or about September 2, 2020, at approximately 6:52 p.m., Defendant Richmond observed Plaintiff and two other inmates drinking an alcoholic substance.  Id. at 9.  Richmond then ordered all three inmates to exit the cell where they

---

[2]  Although Plaintiff used the space provided on the Court-approved form for five claims, in the space for the fifth claim he wrote, "See attached pages for complete complaint [and] for specific facts along with names and times.  ECF No. 9 at 8.  In the attached pages, Plaintiff does not clearly assert a fifth claim for relief.

were drinking alcohol.  Id.  Plaintiff concedes that he began to wrestle with Defendants Richmond and McKeen, and that Richmond sprayed Plaintiff with three bursts of Oleoresin Capsicum (O.C.) in the forehead, eyes, and nose.  Id.  Plaintiff further concedes that following being sprayed, he struck Richmond "before being subdued by Defendants Richmond and McKeen".  Id.

Following Plaintiff's wrestling with, then striking Defendant Richmond, Plaintiff was placed in rear restraints.  Plaintiff claims those restraints were not double locked to ensure the restraints would not further tighten.  Id.  Plaintiff asserts that after he was placed in rear restraints, Defendant McKeen and another inmate were taken "to medical to be assessed", but that he was taken to an interview room.  Id. at 10.  From this time forward, Plaintiff claims that although he was compliant Defendants refused to decontaminate him as punishment.  Id. at 11 – 13.  At approximately 8:45 p.m., "Defendants Killgore and Williams escort[ed] Plaintiff to medical [ ] to be decontaminated."  Id. at 12.

Plaintiff claims he suffered the following physical injuries: pain on his face from O.C. chemical exposure which caused temporary blindness: coughing and breathing problems which persisted for several hours resulting in a panic attack; pain and numbness in his hands and feet; and exacerbation of Plaintiff's PTSD and other mental illnesses which caused difficulty sleeping, anxiety, depression and hypertension resulting in muscle pain.  ECF No. 9 at 15.  For relief, Plaintiff requests that the Court award him the following damages, which he requests be jointly and severally liable: (1) compensatory damages for past, present, and future pain and suffering, loss of enjoyment of life, mental and emotional distress and humiliation; (2) punitive damages; (3) attorneys fees and costs; and (4) any other relief the Court determines to be just and appropriate.  Id. at 16.

### B.       Motion to Dismiss

On October 26, 2021, Defendants filed a motion to dismiss and memorandum in support thereof.  ECF No. 35, 36.  Defendants argue that: (1) the supervisory defendants are immune from liability under § 1983; (2) Plaintiff failed to state a claim upon the remaining defendants regarding the alleged use of excessive force; and (3) that affirmative defense of qualified immunity protects Defendants from liability.  ECF No. 36.

More specifically, as to their supervisory immunity argument, Defendants assert that Plaintiff's claims fail to identify a deficiency in a training program which is both attributable to any of the supervisory defendants and which led to his injuries.  Rather, Defendants assert that Plaintiff's claims as to supervisory defendants are conclusory and are precluded by Ashcroft v. Iqbal, 556 U.S. 662, 680 – 81 (2009).  ECF No. 36 at 4 – 5.

Defendants assert that Plaintiff has failed to state a claim upon which relief may be granted as to Defendants McKeen, Richmond, Wade, Williams, Killgore, Cook, and Patterson, because Plaintiff's allegations do not support an Eighth Amendment violation. Defendants contend their actions did not constitute excessive force in violation of the Eighth Amendment because Plaintiff was pepper sprayed and restrained after he was caught drinking alcohol, assaulting an officer and attempting to "gouge th[e] officer's eyes."  Id. at 5 – 6.  Further, Defendants assert that correctional officer are permitted to leave an inmate who is dangerous and disruptive in restraints.  Id. at 6.  Additionally, Defendants argue that at the time he receive medical treatment Plaintiff did not complain of any injury other than his skin burning from the O.C.  Id. at 7.

As to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, Defendants contend their actions did not constitute gross incompetence,

or shock the conscience. Id. at 9. Defendants further assert that Plaintiff's complaint and attachments thereto "confirm that medical personnel were treating other parties, whom Plaintiff himself injured, at the time." Id.

Defendants' assertion of the affirmative defense of qualified immunity is based on Plaintiff being violent inmate who was "recently attempting to gouge eyes out of support staff". Finally, Defendants contend that following such circumstances which required the use of force to reestablish control, they "cannot possibly have known that restraining, for a few hours" Plaintiff was a constitutional violation. Id.

### C.    Plaintiff's Response to Motion to Dismiss

Plaintiff filed his response on November 12, 2021, which argues that: (1) supervisory Defendants Strong and Pszczolkowski "would have been aware of chemical agents being used as punishment on inmates" [ECF No. 41 at 4]; (2) Defendants Stocklasp and Sellers were responsible for training and supervising their subordinates, and failed to ensure their own policies were enforced [Id. at 5 – 6]; (3) Defendant McKeen required only limited medical treatment which did not merit a two hour delay in treatment of Plaintiff [Id. at 6 – 7]; (4) Defendants Richmond, Wade, Williams, Killgore, Cook and Patterson failed to intervene while Plaintiff's rights were being violated [Id. at 10 – 11]; and (5) Defendants are not entitled to qualified immunity [Id. at 16 – 17].

### D.    Defendant's Reply

On November 22, 2021, Defendants filed a reply. ECF No. 53. Therein, Defendants assert that Plaintiff is a frequent prison litigator, who has filed multiple grievances and lawsuits in both state and federal courts. Id. at 3 – 4. Defendants cite to

the many actions filed by Plaintiff and provided copies of many of the grievances filed by Plaintiff.  ECF Nos. 53 at 4, 53-1 through 53-25.

Defendants argue that Plaintiff complaint[3] fails to state any facts to support his supervisory liability claim.  ECF No. 53 at 5.  Defendants contend that the holdings of Iqbal and Twombly preclude liability under the theory of supervisory liability.  Id.  Further, Defendants assert that Plaintiff's allegations are insufficient to state any plausible claims, but "merely offers the unadorned allegation" that the supervisory defendants failed to train employees, without facts to support the claim.  Id. at 6 – 7.  Defendants argue that Plaintiff's asserted need for discovery to obtain specific policies constitutes "bald speculat[ion] that some policies exist which may prove his theory, essentially showing that he does not have any idea if a policy was violated or if training was not given."  Id. at 7.

As to Plaintiff's other three claims, Defendants assert that the facts presented by Plaintiff support officers' subjective decision to pepper spray Plaintiff and keep him in restraints for less than two hours.  Id. at 8.  Defendants point to the fact that Plaintiff "illegally drank alcohol in prison, tried to fight an officer, and was restrained for less than two hours," supported Defendants' actions.  Id.  Further, Defendants argue they are permitted "wide-ranging deference" to preserve internal order and discipline, and to maintain institutional security.  Id., citing Griffin v. Hardwick, 604 F.3d 949, 954 (6th Cir. 2010).  Moreover, Defendants argue that Plaintiff failed to allege facts relating to how each Defendant violated his rights by the alleged excessive use of force.  Id. at 9.

---

[3]  To the extent that Plaintiff attempts to buttress the claims contained in his complaint in his response to the motion for summary judgment, Defendants argue that such claims are not properly before the court.  ECF No. 53 at 6.

Defendants also argue that Plaintiff's failure to intervene claims fail to state a claim upon which relief may be granted because Plaintiff's restraint was legal.  Defendants assert that only in the case of an illegal restraint can a bystander be found liable for failure to intervene.  Id.  Finally, Defendants argue that qualified immunity protects them because "even based on the facts of Plaintiff's own complaint, [Defendants] exercised good, or at a minimum constitutionally passable judgment."  Id. at 10.

### E.    Plaintiff's Motion

On December 6, 2021, Plaintiff filed a motion to strike from the docket Defendant's Reply.  ECF No. 56. The motion asserts that Defendants twenty-five exhibits [ECF Nos. 53-1 through 53-25], "have nothing to do with the current civil action."  ECF No. 56 at 1. For relief, Plaintiff asks that the motion be stricken, rather than the exhibits be stricken. Id. at 2.

### III.    LEGAL STANDARD

### A.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

7

> Section 1915(d)[4] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him."  Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

**B.    § 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

---

[4]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257

(1978).  In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated

what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations
> are required in order to state a cause of action under that
> statute. First, the plaintiff must allege that some person has
> deprived him of a federal right. Second, he must allege that
> the person who has deprived him of that right acted under
> color of state or territorial law.

Gomez, 446 U.S. at 640.

"Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."  Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution."  Id.  "A Bivens claim is brought against the

individual official for his or her own acts, not the acts of others."  Ziglar v. Abassi, 137

S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory
> liability under § 1983: (1) that the supervisor had actual or
> constructive knowledge that his subordinate was engaged in
> conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff; (2) that the
> supervisor's response to that knowledge was so inadequate
> as to show "deliberate indifference to or tacit authorization of
> the alleged offensive practices,"; and (3) that there was an
> "affirmative causal link" between the supervisor's inaction and
> the particular constitutional injury suffered by the plaintiff.

(internal citations omitted).  The Court further explained that, "[t]o satisfy the requirements

of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of

(2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof."  Shaw, 13 F.3d at 799.  "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

C.     **Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the

10

elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570. In <u>Twombly</u>, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u> at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u> at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light

most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.    ANALYSIS

### A.    First Claim for Relief: Qualified Immunity of Defendants Strong, Pszczolkowski, Stocklasp, and Sellers

Plaintiff first claim for relief fails to allege that Strong, Pszczolkowski, Stocklasp, or Sellers, "through the official's own individual actions, has violated the Constitution," as required by Iqbal.   To the extent that Plaintiff alleges that Strong, Pszczolkowski, Stocklasp, or Sellers failed to ensure the Plaintiff was free from cruel and unusual punishment," he fails to allege that Strong, Pszczolkowski, Stocklasp, and/or Sellers were personally responsible for any action or inaction.[5]  ECF No. 9 at 7.  Further, although Plaintiff claims that Strong, Pszczolkowski, Stocklasp, and/or Sellers are responsible for the actions of subordinate officials at the Northern Correctional Facility, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

Strong, Pszczolkowski, Stocklasp, and Sellers, none of whom Plaintiff alleges had any contact with him directly, had, at most, only supervisory responsibility for acts of their subordinates who had contact with Plaintiff.  However, "Government officials may not be held liable for the unconstitutional conduct of their subordinates."  Ashcroft v. Iqbal, supra, 556 U.S. at 676.

---

[5]    In the complaint filed on the Court-approved form [ECF No. 9] Plaintiff named Strong, Pszczolkowski, Stocklasp, or Sellers as Defendants.  Plaintiff identified Strong as the Superintendent of the Northern Correctional Facility, Pszczolkowski as the Deputy Superintendent, and Sellers, as Captain of the Northern Correctional Facility.  ECF No. 9.  However, the complaint failed to identify Stocklasp's position. Id.  However, in his initial complaint Plaintiff identified Stocklasp as Assistant Superintendent of Security. ECF No. 1 at 5.  In the complaint, Plaintiff failed to attribute any specific wrongdoing to any of these four Defendants.  Nevertheless, because all four of these Defendants were supervisors or administrators, they are treated as such under a qualified immunity analysis.

To the extent that Plaintiff alleges that Strong, Pszczolkowski, Stocklasp or Sellers as superintendent, deputy superintendent, assistant superintendent, and captain at Northern Correctional Facility, possessed personal knowledge of any problems with Plaintiff's medical treatment, Plaintiff still fails to state a claim upon which relief can be granted. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)). Plaintiff's claim fails as his broad assertions do not identify what official policy or custom for which these defendants were responsible when carried out by their subordinates.

Plaintiff fails to state how Strong, Pszczolkowski, Stocklasp or Sellers violated his civil rights, or how their actions violated any law or the Constitution. Further, Plaintiff fails to meet the elements necessary to establish supervisory liability pursuant to Shaw v. Stroud. Plaintiff fails to show that the supervisory defendants had actual or constructive knowledge of the subordinates' conduct, that the supervisory defendants' response to that knowledge was so inadequate that it demonstrated deliberate indifference to the alleged offensive practices, or any affirmative causal link between the supervisory defendants' inaction and the harm allegedly suffered by Plaintiff.

Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on

professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).  Thus, even assuming Strong, Pszczolkowski, Stocklasp, or Sellers, supervisory Defendants, had notice of Plaintiff's administrative grievance regarding his medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit.  Further, to the extent that Strong, Pszczolkowski, Stocklasp, and Sellers properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and Strong, Pszczolkowski, Stocklasp, or Sellers may not be held liable under § 1983 for that reliance.

Additionally, as noted above, vicarious liability under the theory of respondeat superior is inapplicable to § 1983 actions.   Section 1983 claims are brought against individual state actors for their own acts.   Ashcroft v. Iqbal, supra, 556 U.S. at 676. However, Plaintiff has failed to articulate any violation of his Constitutional rights Strong, Pszczolkowski, Stocklasp, or Sellers.  Further, Plaintiff failed to allege that those named supervisory officials personally or in their individual capacities took any action which violated his Constitutional rights.  Accordingly, the Court finds that Strong, Pszczolkowski, Stocklasp, and Sellers are entitled to qualified immunity against Plaintiff's claims that they should be liable as the supervisors of subordinates who he claims violated his rights. Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to Strong, Pszczolkowski, Stocklasp, or Sellers.  Because Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and

his complaint should be dismissed with prejudice as to Strong, Pszczolkowski, Stocklasp, or Sellers.

Finally, to the extent that Plaintiff asserts claims against Strong, Pszczolkowski, Stocklasp, or Sellers in their official capacities, they are not liable under § 1983.  The Supreme Court has long recognized that such state officials are immune from liability under § 1983:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). Accordingly, even if the Court were to consider Plaintiff's claims against Strong, Pszczolkowski, Stocklasp, or Sellers, as being asserted against those Defendants in their official capacity, Plaintiff has failed to state a claim upon which relief may be granted.

## B.   Defendants McKeen, Richmond, Wade, Williams, Killgore, Cook and Patterson

Plaintiff's second, third and fourth claims are against the correctional officers, McKeen, Richmond, Wade, Williams, Killgore, Cook and Patterson who Plaintiff claims exposed him to pepper spray to obtain control, delayed Plaintiff access to medical care to cause him pain, and refused to decontaminate Plaintiff for nearly two hours.  Plaintiff's assertion of injury was that as a result of the pepper spray for several hours he suffered pain in his face, temporary blindness, coughing and breathing difficulty, which eventually

led to a panic attack.  Further, Plaintiff asserts he experienced pain and numbness in his hands and feet, as a result of too-tight restraints.

### 1.      Second Claim for Relief: Excessive Force

Plaintiff claims that he was subjected to cruel and unusual punishment when McKeen, Richmond, Wade, Williams, Killgore, Cook, and Patterson used excessive force when they used pepper spray to obtain control after Plaintiff attacked guards.

A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components, one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.  See e.g., Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).  The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. Wilson v. Seiter, 501 U.S.294, 299 (1991). When prison officials are accused of using excessive force, the "wantonness" issue turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of "contemporary standards of decency."  Hudson, 503 U.S. at 8. In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. (quoting Wilson, supra at 298).

When prison officials use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated . . . This is true whether or not

significant injury is evident." <u>Hudson</u>, 503 U.S. at 9.  However, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to "*de minimis* use of physical force provided that the use of force is not the sort repugnant to the conscience of mankind." <u>Id.</u> at 10 (internal quotation marks omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" <u>Id.</u> at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973).

In Plaintiff's case, Defendants applied O.C. pepper spray and placed Plaintiff in hand and leg restraints.  The undersigned must consider whether such force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, as required by <u>Hudson</u>.  Both parties agree that pepper spray was used on Plaintiff to subdue him after he attacked correctional officers.  Further, both parties agree that following the application of pepper spray, correctional officers then placed Plaintiff in restraints.  It appears that pepper spray and restraints were both used in a good-faith effort to maintain or restore discipline after Plaintiff attacked correctional officers.  Accordingly, Plaintiff's second claim for relief fails to state a claim upon which relief may be granted.

### 2.    Third Claim for Relief: Denial of Medical Care

Plaintiff claims that he was subjected to cruel and unusual punishment when McKeen, Richmond, Wade, Williams, Killgore, Cook, and Patterson denied him medical care for approximately two hours after they used pepper spray to obtain control after Plaintiff attacked guards.

In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).  In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto, *quoting* Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) *cert. denied*, 486 U.S. 1006 (1988). The Fourth Circuit previously explained in Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), that, " '[b]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.' " *Citing* Hudson v. McMillian, 503 U.S. 1, at 9 (*quoting* Estelle, 429 U.S. at 104)." 71 F.3d at 166. "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference."  King v. United States, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (*quoting* Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim."  Jackson v. Sampson, 536 Fed. Appx. 356 (4th Cir. 2013), *citing*

Russell v. Shaffer, 528 F.2d 318, 319 (4th Cir. 1975). Application of the Farmer test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test.   Plaintiff has not been deprived of a basic need that was objectively sufficiently serious because his discomfort, including breathing difficulty and temporary blindness, from pepper spray which he claims resulted in a panic attack, is not an objectively sufficiently serious condition.   The same analysis applies to Plaintiff's claim of temporary numbness in his hands and feet from tight restraints, which is also not objectively sufficiently serious to warrant medical treatment.   A serious medical need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.   Serious medical conditions are those recognized to affect an essential life function.   Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious).   Plaintiff received medical treatment less than two hours after exposure to O.C. chemical spray.   Further, at the time he was treated, Plaintiff reported no injuries other than his temporary discomfort from exposure and restraint. Plaintiff's discomfort, while of concern to him, is not a serious medical condition as contemplated by Farmer.   Accordingly, Plaintiff's third claim for relief fails to state a claim upon which relief may be granted.

### 3.     Fourth Claim for Relief: Deliberate Indifference

Plaintiff's final claim is that he was subjected to cruel and unusual punishment when McKeen, Richmond, Wade, Williams, Killgore, Cook, and Patterson refused to decontaminate him for approximately two hours after they used pepper spray to obtain control over Plaintiff following his attack of some of the Defendant Correctional Officers.

"Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom*. Phillip v. Scinto, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017).  "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " De'Lonta v. Angelone, 330 F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)).  As explained in Scinto, the "objective" prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " 841 F.3d at 225.  Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." Id., quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

As noted above, Plaintiff was pepper sprayed after he attacked correctional officers, and was held in restraints for less than two hours before being provided medical

treatment and decontaminated.  It appears that to the undersigned that those conditions, if they constitute a deprivation of rights, are not sufficiently serious, and further, that the Defendants did not act with a sufficiently culpable state of mind to establish liability under § 1983.  Accordingly, Plaintiff's fourth claim for relief fails to state a claim upon which relief may be granted.

For all the above reasons, it appears that Plaintiff has failed to state a claim against any named Defendant.  Therefore, because Plaintiff has failed to state a claim, this complaint should be dismissed with prejudice.

## V.      RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Plaintiff's complaint [ECF No. 9] be **DISMISSED WITH PREJUDICE**.

Further, it is **RECOMMENDED** that Defendants' motion to dismiss [ECF No. 35] be **GRANTED**, and that Plaintiff's motion to strike [ECF No. 56] be **DENIED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the**

**Circuit Court of Appeals.**  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:      May 19, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

22